UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. 2:22-cv-06112-MCS-MRW | Date September 19, 2023 |
| Title *Gavrieli Brands, LLC v. Lovie Pearl GmbH* | |

Present: The Honorable Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** (IN CHAMBERS) ORDER RE: MOTION FOR DEFAULT JUDGMENT AND APPLICATION TO SUPPLEMENT RECORD (ECF NOS. 25, 28)

Plaintiff Gavrieli Brands, LLC moves for default judgment against Defendant Lovie Pearl GmbH. (Notice of Mot., ECF No. 25; Mot., ECF No. 25-1.) Defendant does not oppose the motion and has not otherwise appeared to defend this action. The Court deems this motion appropriate for decision without a hearing. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

Plaintiff also filed an application to supplement the record with a recent communication with Defendant's counsel. (Appl., ECF No. 28.) The Court finds good cause to allow Plaintiff to proffer the additional evidence in support of the instant motion.

## I. BACKGROUND

According to the complaint, Plaintiff sells a famous line of footwear called Tieks, which are foldable ballet-style flats featuring a split sole. (Compl. ¶ 15, ECF No. 1.) The split sole, dubbed the "Peekaboo," bears colors contrasting from the upper portion of the footwear, which gives the Tieks shoes a distinctive look. (*Id.*) Plaintiff has committed significant resources "in developing Tieks® designs and

securing the intellectual property rights that protect it, including" 13 design patents and two utility patents. (*Id.* ¶¶ 21–37.) Plaintiff sells these shoes "in over fifty (50) styles and patterns, and [the shoes] retail for $185 to $345 per pair." (*Id.* ¶ 16.) Defendant is a German company who sells shoes similar to Plaintiff's ballet-style flats designed with split soles; the colors of the soles also contrast with the upper parts of the shoe. (*Id.* ¶¶ 6, 38.) Defendant sells its products through "through its Amazon Web Store with the name 'loviepearl'" at a cheaper price. (*Id.* ¶ 39; Compl. Ex. P, ECF No. 1-15.)

Based on these allegations, Plaintiff brings 15 claims of patent infringement of the following design and utility patents: "United States Design Patent[] Nos. D686,812, D688,855, D943,897, D943,252, D846,259, D903,279, D846,845, D885,018, D886,435, D846,849, D681,927, D888,380, and D844,951 and United States Patent[] Nos. 8,745,893 and 9,398,786." (Compl. ¶¶ 2, 43–213.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 55(b)(2) permits the Court to enter default judgment. The Court need not make detailed findings of fact in the event of default. *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1414 (9th Cir. 1990). On entry of default, well-pleaded allegations in the complaint concerning liability are taken as true. Damages, however, must be proven. *Garamendi v. Henin*, 683 F.3d 1069, 1080 (9th Cir. 2012) (citing *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977)).

Courts consider several factors in determining whether to enter default judgment: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action[,] (5) the possibility of a dispute concerning material facts[,] (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

Local Rule 55-1 requires the party seeking default judgment to submit a declaration establishing (1) when and against which party the default was entered; (2) the identification of the pleading to which default was entered; (3) whether the defaulting party is an infant or incompetent person, and if so, whether that person is represented by a general guardian, committee, conservator, or other representative; (4) that the Servicemembers Civil Relief Act does not apply; and (5) that the defaulting party was properly served with notice. C.D. Cal. R. 55-1.

## III. DISCUSSION

### A. Jurisdiction and Service of Process

The Court must first address whether it may exercise subject-matter jurisdiction and personal jurisdiction over Defendants and whether Plaintiff properly served Defendants. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has original subject-matter jurisdiction over Plaintiff's patent infringement claims. 28 U.S.C. § 1338(a), (b).

Plaintiff asserts that the Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k)(2). Rule 4(k)(2) permits a court to exercise personal jurisdiction where "a claim . . . arises under federal law" if "the defendant is not subject to jurisdiction in any state's courts of general jurisdiction" and if "exercising jurisdiction is consistent with the United States Constitution and laws." A patent infringement action arises under federal law. 28 U.S.C. § 1338(a). Personal jurisdiction analysis in patent infringement actions is governed by Federal Circuit precedent. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009). As to the second Rule 4(k)(2) element, it is the defendant's burden to identify "a suitable forum in which the plaintiff could have brought suit" in order to avoid application of Rule 4(k)(2). *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1415 (Fed. Cir. 2009). Defendant has failed to do so here, and the Court concludes that Rule 4(k)(2) applies.

As to the final Rule 4(k)(2) element, the Federal Circuit applies "a three-factor test for specific jurisdiction, which considers whether (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to the defendant's activities with the forum, and (3) assertion of personal jurisdiction is reasonable and fair." *Synthes*, 563 F.3d at 1297. Rule 4(k)(2) "contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits." *Id.* at 1295. "[A] court may properly assert specific jurisdiction, even if the contacts are isolated and sporadic, so long as the cause of action arises out of or relates to those contacts." *Id.* at 1297.

A defendant purposefully directs its activities at a forum if it places its products in the stream of commerce such that the defendant knew the likely destination of the products and that they should reasonably anticipate being haled

into court there. *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1566 (Fed. Cir. 1994). Here, Defendant lists and sells its products from an Amazon web store, placing the allegedly infringing shoes into the American stream of commerce. (Lyons Decl. Ex. A, ECF No. 25-3 (showing several verified purchases of United States-based customers); Lyons Decl. Ex. D, ECF No. 25-6 (same).) The product listings are written in English and display prices in U.S. dollars. (*Id.*) Further, Plaintiff purchased two of Defendant's products, which were delivered to Inglewood, California. (Compl. Ex. P.) These allegations are sufficient to make a prima facie—and unrebutted—showing that Defendant purposefully directed its activities at the United States by intentionally placing the accused products into the American stream of commerce. *See Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, No. 18-CV-823 JLS (JLB), 2021 WL 3493094, at *10 (S.D. Cal. Aug. 6, 2021). The Court finds that Plaintiff has established the first specific jurisdiction prong.

The second specific jurisdiction prong is satisfied because Plaintiff's claim of patent infringement stems from Defendant's sale and shipment of allegedly infringing goods to a California address. (Compl. ¶¶ 39–40; Compl. Ex. P); *Beverly Hills*, 21 F.3d at 1565. And the third prong is met because Defendant has not appeared to contest whether the exercise of jurisdiction would be reasonable or fair. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985) (noting defendant bears the burden of "present[ing] a compelling case that the presence of some other considerations would render jurisdiction unreasonable").

The Court thus concludes that it can properly exercise subject-matter jurisdiction over the claims and personal jurisdiction over Defendant.

### B. Procedural Requirements

The motion meets the procedural requirements of Local Rule 55-1. The Clerk entered default against Defendant on May 12, 2023. (Default by Clerk, ECF No. 24.) Defendant is not an infant or incompetent, and the Servicemembers Civil Relief Act does not apply. (Lyons Decl. ¶¶ 7–8, ECF No. 25-2.) Defendant has been served with notice of the motion. (*Id.* ¶ 16).

### C.   *Eitel* Factors

#### 1.   Prejudice to Plaintiffs

The first *Eitel* factor examines whether the plaintiff will be prejudiced if default judgment is not granted. *Eitel*, 782 F.2d at 1471. A plaintiff suffers prejudice if there is no recourse for recovery absent default judgment. *Philip Morris USA Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003). Here, Plaintiff asserts that absent the grant of default judgment, it will "will suffer from Defendant's unwillingness to appear because [Plaintiff] cannot pursue its claims or recover any remedies from Defendant without Court intervention." (Mot. 9.) The Court finds that the first *Eitel* factor favors the grant of default judgment.

#### 2.   Merits of Plaintiff's Claims and Sufficiency of Complaint

The second and third *Eitel* factors require courts to determine, notwithstanding entry of default, whether the facts alleged give rise to a legitimate cause of action because "claims [that] are legally insufficient . . . are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). For this factor to weigh in a plaintiff's favor, the plaintiff must properly allege the elements of the asserted causes of action and adequately plead its claims. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175–76 (C.D. Cal. 2002).

##### a.   *Design Patent Infringement*

To demonstrate design patent infringement, a plaintiff must show that the defendant "makes, uses, offers to sell, or sells any patented invention" in the United States without authority. 35 U.S.C. § 271(a). The plaintiff must prove that the defendant used, without consent, a design substantially similar to a patented design so as to cause confusion "in the eye of an ordinary observer." *Gorham Co. v. White*, 81 U.S. (14 Wall.) 511, 528 (1871). "Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (cleaned up).

The second and third factors support entering default judgment, as Plaintiff alleges sufficient facts to state a claim for design and utility patent infringement. Plaintiff has clearly alleged that it owns all rights, titles, and interests in "United States Design Patent[] Nos. D686,812, D688,855, D943,897, D943,252, D846,259, D903,279, D846,845, D885,018, D886,435, D846,849, D681,927, D888,380, and

D844,951 and United States Patent[] Nos. 8,745,893 and 9,398,786." (Compl. ¶ 2; Compl. Exs. A–O.)[1] Further, Defendant sells shoes that appear nearly identical to each of Plaintiff's 13 patented designs when placed side-by-side. (*See generally* Compl. Ex. Q, ECF No. 1-17.) Both parties' designs are ballet-style flats that feature split soles: one for the heel and one for the balls and toes of the feet. (*Id.*) The colors of the outsoles contrast with the upper part of the shoes. (*Id.*) Based on the charts in the complaint, it is clear that "an ordinary observer familiar with Plaintiff's patented product would be deceived into believing that the Defendants' product is the same as the patented design." *Deckers Outdoor Corp. v. Ozwear Connection Pty. Ltd.*, No. CV 14–2307 RSWL (FFMx), 2014 WL 4679001, at *10 (C.D. Cal. Sept. 18, 2014) (citing *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008)). Indeed, an ordinary consumer might mistake any one of Defendant's designs for Plaintiff's patented designs. Plaintiff has stated a plausible claim for design patent infringement.

          b.       *Utility Patent Infringement*

Plaintiff likewise succeeds on the utility patent infringement claims. In the complaint, Plaintiff alleges that Defendant "has made, used, offered for sale, sold, and/or imported into or in the United States, and continues to make, use, offer for sale, sell, and/or import into or in the United States" several products infringing on the '893 Patent and '786 Patent. (Compl. ¶¶ 175, 196.) Plaintiff details the precise manner in which the accused products infringe each element of "claim 33 of the '893 patent" and "claim 34 of the '786 patent." (*Id.* ¶¶ 177–87, 198–208.) These allegations cross well into the realm of plausibility.

          c.       *Willful Patent Infringement*

The Court, however, is not convinced that Plaintiff has plausibly demonstrated willful patent infringement. Plaintiff points to three pieces of evidence. First, Defendant's Amazon storefront displays consumer reviews comparing Defendant's accused product to Plaintiff's patented Tieks shoe. (Mot. 12 (citing Lyons Decl. Ex. A).) Second, Plaintiff proffers a link to its own website, which provides notice of each patent it owns. (*Id.*) According to Plaintiff, the consumer reviews highlight similarities to Plaintiff's Tieks shoe and the clear notice of Plaintiff's patent rights on its own website demonstrate Defendant's knowledge of Plaintiff's patents. (*Id.*) And third, after receiving notice of the complaint, Defendant

---

[1] Exhibits A–O are contained in docket numbers 1-1 to 1-15.

continued selling the accused products yet disabled its website and customer service email address. (*Id.*)

Even if "a finding of willfulness requires 'no more than deliberate or intentional infringement[,]'" (*id.* (quoting *SRI Int'l, Inc. v. Cisco Sys.*, Inc., 14 F.4th 1323, 1330 (Fed. Cir. 2021))), there is insufficient evidence to demonstrate Defendant's intent. Plaintiff proffers no proof that Defendant has ever read these consumer reviews, viewed Plaintiff's website, or read the claims in any one of the 15 patents at issue in this action. And although Defendant's conduct post-dating the complaint is a relevant consideration under the totality of the circumstances, *Shirley, Inc. v. Bentley Labs., Inc.*, 794 F.2d 1561, 1568 (Fed. Cir. 1986); (Mot. 12), it is just as likely that the filing of the complaint and Plaintiff's efforts to serve notice thereafter constituted the first time Defendant became aware of Plaintiff's patents, absent some fact linking Defendant's post-filing conduct to its pre-filing state of mind. The Court finds that Plaintiff has failed to demonstrate that Defendant willfully infringed Plaintiff's patents.

Accordingly, the second and third *Eitel* factors weigh in favor entering default judgment on all claims except to the extent Plaintiff alleges willful infringement.[2]

### 3. Sum of Money at Stake

In the fourth *Eitel* factor, the Court balances "the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, 238 F. Supp. 2d at 1176. Here, Plaintiff does not seek any monetary damages, only "a finding of liability and a permanent injunction preventing further infringement by Defendant's ongoing advertising and selling of its infringing products." (Mot. 12.) This factor therefore weighs in favor of default judgment. *See PepsiCo*, 238 F. Supp. 2d at 1176–77 (finding amount at stake favored default judgment where plaintiff sought injunctive relief, not monetary damages, for trademark infringement).

### 4. Possibility of Dispute

The fifth *Eitel* factor examines whether there is a likelihood of a dispute of material facts. 782 F.2d at 1471–72. Upon entry of default, the court accepts all well-

---

[2] Because Plaintiff does not seek enhanced remedies for willful infringement under 35 U.S.C. § 248, (Mot. 14–18), the Court concludes that an adverse finding on the willfulness allegations does not prevent the entry of default judgment as requested.

pleaded facts as true. *Garamendi*, 683 F.3d at 1080. As such, when a plaintiff pleads the facts necessary to prevail, there is little possibility of dispute over material facts. *Castworld*, 219 F.R.D. at 500. Plaintiff's complaint adequately alleges design and utility patent infringement, so the possibility of dispute is remote.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers whether the defendant's actions may be due to excusable neglect. *Eitel*, 782 F.2d at 1472. There is little possibility of excusable neglect when the defendant is properly served and is aware of the litigation. *See Wecosign, Inc., v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. 2012). Plaintiff properly served Defendant under the Hague Convention. (Proof of Service 4–5.)[3] Further, it appears that Defendant is aware of these proceedings, given its counsel's July 5, 2023 email to Plaintiff's counsel that Defendant will not answer written or telephonic inquiries. (2d Lyons Decl. Ex. A, ECF No. 28-2; Appl. 2.) The possibility of excusable neglect is minimal.

### 6. Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. "However, the mere existence of Fed. R. Civ. P. 55(b) indicates that this preference, standing alone, is not dispositive." *PepsiCo*, 238 F. Supp. 2d at 1177 (internal quotation marks omitted). Defendant failed to respond to Plaintiff's complaint or offer any defense in this matter, precluding a decision on the merits. This factor is neutral to the entry of default judgment. *See id.*

Weighing the *Eitel* factors, the Court finds that default judgment is merited.

### D. Remedy

The sole remedy Plaintiff seeks is a permanent injunction "enjoining Defendant from all further acts of infringement including by advertising and selling infringing products on the Lovie Pearl Amazon Web Store." (Mot. 18.) To determine whether an injunction is appropriate, courts analyze the following four factors: (1) whether the patent owner has suffered an irreparable injury; (2) whether remedies available at law are inadequate to compensate for that injury; (3) whether a remedy

---

[3] Pinpoint citations of the proof of service refer to the page numbers in the CM/ECF header.

in equity is warranted considering the balance of hardships between the plaintiff and the defendant; and (4) whether the public interest would be disserved by a permanent injunction. *See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). Plaintiff has satisfied each of these elements.

Plaintiff argues that it has suffered irreparable harm in the form of loss of market share, erosion of sales price, and loss of good will. (Mot. 15–16.) According to Plaintiff, because it owns the design and utility patents for these foldable ballet flats with color-contrasted split soles, Defendant's acts of infringement unlawfully enter this otherwise monopolized market. (*Id.* at 15.) Thus, Plaintiff has been forced to compete with a market entrant who offers a nearly identical yet lesser quality product at lower prices. (*Id.* at 15–16.) Several consumers have already expressed disappointment with the quality of Defendant's confusingly similar products, which consumers are likely to associate with Plaintiff's patented products. (*Id.* at 16.) The Court finds these allegations all point to irreparable harm arising from Defendant's infringing activities. *See Broadcom Corp. v. Emulex Corp.*, 732 F.3d 1325, 1337–38 (Fed. Cir. 2013) (finding that loss of market share and reduced sales constitute irreparable harm); *Hydrodynamic Indus. Co. Ltd. v. Green Max Distributors, Inc.*, No. 2:12-CV-05058-ODW(JEMx), 2014 WL 2740368, *3–4 (C.D. Cal. June 16, 2014) (finding irreparable harm where a nearly identical product causes loss of good will). Accordingly, the Court finds that this *eBay* factor weighs in favor of an injunction.

As to the adequacy of legal remedies, Plaintiff argues that loss of market share, price erosion, and loss of good will are impossible to redress by an award of money damages. (Mot. 16.) On the one hand, "competitive harms theoretically can be offset by monetary payments in certain circumstances," particularly when there is no reason to think that the defendant's infringing activities will cease. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1155–56 (Fed. Cir. 2011). It appears, however, that Defendant is entering insolvency proceedings in German courts, so it remains to be seen whether Defendant's infringing activities will continue. (Appl. 1; 2d Lyons Decl. Ex. A.) In any event, Defendant's apparent insolvency casts serious doubt as to Plaintiff's ability to ever recover monetary damages for these acts of infringement, which supports a finding in Plaintiff's favor. *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219–20 (C.D. Cal. 2007) ("Damages are no remedy at all if they cannot be collected, and most courts sensibly conclude that a damage judgment against an insolvent defendant is an inadequate remedy." (internal quotation marks omitted)). The Court finds that this *eBay* factor weighs in favor of an injunction.

The Court concludes that the balance of hardships tips in Plaintiff's favor since "[t]here is no hardship to a defendant when a permanent injunction would merely require the defendant to comply with law." *Deckers Outdoor*, 2014 WL 4679001, at *13; *see also Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986) ("One who elects to build a business on a product found to infringe cannot be heard to complain [of] an injunction against continuing infringement."). This factor weighs in favor of an injunction.

> An injunction also comports with the public interest. While,
>> the public often benefits from healthy competition[,] . . . the public generally does not benefit when that competition comes at the expense of a patentee's investment-backed property right. . . . As a result, the public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors, especially when the patentee practices his inventions.

*Apple Inc. v. Samsung Elecs. Co., Ltd.*, 809 F.3d 633, 647 (Fed. Cir. 2015). So, even if lower prices and a greater number of available products offer some benefits to consumers, these facts do not outweigh the need to enjoin acts of patent infringement absent some "countervailing factors." *Id.* Here, the Court can identify none preventing the entry of an injunction. Defendant does not offer some lifesaving product, *id.*, or other product "critical [to the] public interest," *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1458 (Fed. Cir. 1988). Rather, Plaintiff seeks an injunction that is "commensurate in scope with its monopoly rights" over the designs associated with its foldable ballet-style flats. *Apple*, 809 F.3d at 647. The Court finds that this factor weighs in favor of an injunction.

A permanent injunction is thus appropriate under the *eBay* factors. While the Court questioned whether Defendant would continue infringing Plaintiff's patents given the commencement of insolvency proceedings, voluntary cessation of the infringing activity supports the denial of relief when it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal quotation marks omitted). It is the burden of the party voluntarily ceasing its conduct to appear and make the strong showing it cannot reasonably be expected to restart its behavior. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 92 (2013). Defendant has not defended this lawsuit despite receiving notice. Should Defendant wish to

make this showing, Defendant is free to enter an appearance and move to set aside the default judgment. Fed. Rs. Civ. P. 55(c), 60(b).

Based on its analysis of the *eBay* factors, the Court concludes that a permanent injunction enjoining any further acts of patent infringement is warranted.

## IV. CONCLUSION

The Court grants Plaintiff's application to supplement the record and motion for default judgment. The Court orders the Clerk to enter judgment and close the case. Pursuant to the grant of a permanent injunction, the Court orders the following:

1. Defendant, and any of its officers, directors, agents, servants, employees, attorneys, subsidiaries, successors in interests, aiders and abettors, and those persons acting in concert or participation with any of them who receive actual notice hereof, are hereby restrained and enjoined from:

   a. making, using, offering to sell, selling within the United States, or importing into the United States any of the Accused Products[4] or any other product not more than colorably different therefrom with respect to U.S. Patent Nos. 8,745,893 and 9,398,786 (the "Asserted Utility Patents");

   b. making, using, offering to sell, selling within the United States, or importing into the United States any of the Accused Products or any other product not more than colorably different therefrom with respect to U.S. Patent Nos. D686,812, D688,855, D943,897,

---

[4] The term "Accused Products" includes Defendant's ballet-style shoes featuring a split sole and color schemes contrasting the upper part of the shoe and the split sole. Specific models include, but are not limited to, the "'Citron,' 'Aquatic Elf,' 'Coconut,' 'Green Python,' 'Malachite,' 'Mushroom,' 'Grassland,' 'Laterite,' 'Lava,' 'Wheat Field,' 'Starry Sky,' 'Blooming Rose,' 'Cloisonné,' 'Deep Sea,' 'Emerald,' 'Manjusaka,' 'Fog,' 'Cotton Candy,' 'Magnolia,' 'Milk Sugar,' and 'Shallow Bay.'" (Compl. ¶ 41.) The Court intends this injunction to be limited only to Defendant's shoes "having designs substantially similar to the" design patents at issue in this case, (*id.* ¶¶ 45, 55, 65, 75, 85, 95, 105, 115, 125, 135, 145, 155, 165), or any of Defendant's shoes infringing the claims in the utility patents at issue in this case, (*id.* ¶¶ 175–77, 196–98).

        D943,252, D846,259, D903,279, D846,845, D885,018, D886,435, D846,849, D681,927, D888,380, and D844,951 (the "Asserted Design Patents") or with an outsole design not more than colorably different than the outsole design in any of the Accused Products; and

    c. advertising, marketing, or otherwise promoting within the United States the Accused Products or any other product not more than colorably different therefrom, including, but not limited to, publishing for sale images of the Accused Products on Amazon, Facebook, Instagram, TikTok, eBay, Pinterest, or any other online marketplace or platform.

**IT IS SO ORDERED.**